08-20232.rr

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-20232-CR-MARTINEZ/BROWN

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

HECTOR MEZA,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This Cause is before the Court on the Defendant's Motion to Suppress Statements, filed May 28, 2008.[1]  The Court has reviewed the Motion and the Response.  Additionally, an evidentiary hearing was held on June 18, 2008, and this Court adopts the transcript of that hearing by reference herein.

### Facts and Discussion

Defendant moves to suppress statements made subsequent to his arrest on March 11, 2008 while at a restaurant parking lot.  In order for Defendant's statements to be admitted, the Government must prove by a preponderance of the evidence that Defendant waived his Miranda rights.  See Colorado v. Connelly, 479 U.S. 157, 168 (1986).  The inquiry is two part:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion or deception.  Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice

---

[1]The Court initially notes that the Motion is untimely, which, in itself, constitutes grounds for denial.  See United States v. Milian-Rodriguez, 828 F.2d 679, 682-83 (11th Cir. 1987).

and the requisite level of comprehension may a court property conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986); see also United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995).  As announced at the hearing, the Court finds that the Defendant knowingly and voluntarily waived his Miranda rights, and that the motion should be denied.

Defendant and FBI Special Agent Marino Ruiz-Miranda testified as to the events surrounding the arrest.  Agent Ruiz testified that he and other law enforcement officers were performing surveillance of a suspected drug transaction in the subject parking lot, when Defendant, who had not yet been known to the agents, arrived, drove around the entire parking lot as if performing surveillance, and then began speaking to one of the subjects.  After a few moments, the Defendant left the parking lot in his car, followed by the suspect.  Some time later, Defendant returned to the same parking lot.  After the known suspects had been arrested, Agent Ruiz and other agents in an unmarked vehicle pulled in back of Defendant's parked car, with blue lights flashing and the siren on. Another unmarked vehicle with its blue lights on the dash, pulled in front of Defendant, blocking him in.  While agents ordered Defendant to put his hands up and exit the vehicle, Defendant pulled forward and then back, striking both vehicles, then began to pull forward again, while the agents pulled closer to block his exit.  Defendant then exited the vehicle, which was still running at which time, and two other agents came from behind and took Defendant to the ground.  Agent Ruiz testified that the agents wore vests which identified them as law enforcement.

Agent Ruiz further testified that Defendant, who had suffered a bloody lip, was treated by emergency medical services personnel who were already present in the parking lot.  Special Agent Ruiz then asked Defendant in Spanish and English whether he would prefer to be read his rights in Spanish or English.  Defendant replied that because there would be legal terminology involved, he

would prefer Spanish.[2]  Agent Ruiz testified that he read Defendant his Miranda rights in Spanish, translated from a card written in English, which Defendant indicated he understood.  Defendant then responded that would like to speak with the agent, and did make statements to Agent Ruiz.  Agent Ruiz testified that Defendant appeared to understand his rights, and did not ask any questions or ask him to repeat any of the rights or to slow down.  Agent Ruiz further testified that at no time was Defendant threatened, either verbally or physically, by the agents, nor was there any coercion involved.  Although the agents were armed, at no time were any guns pointed at Defendant.

Defendant's story was quite different.  The Court finds the testimony of the Defendant to be not credible for several reasons.  The first is Defendant's story as to why he was in the subject parking lot in the first place.  The parking lot contained an Iron Skillet Restaurant, a gasoline station, and a Wendy's Restaurant, in that order.  Defendant testified that the first time he went to the parking lot, he was actually headed to Wendy's but ran into his friend in the Iron Skillet parking lot, and stopped to talk to him for a minute.  When his friend told him he was busy, Defendant left the lot because he "wasn't really hungry," and went to locate someone in the neighborhood about working on a job with him.  Defendant testified that he returned to the Wendy's parking lot because he was "just killing time," and was getting hungry, but he didn't go in right away because he was not really that hungry, and spent about five minutes in his car listening to two songs on the radio.

Defendant claimed that he did not hear any sirens or see any lights, but had his head down when he realized that a car had pulled up suddenly behind him, screeching its brakes.  Defendant further testified that he "panicked" and began to drive forward, not even noticing the other car which had pulled in front of him.  He then put the car in reverse, and it "jumped," striking the vehicle in back of him.  Defendant, still in a panic, attempted to put the car into park but instead either put it in drive

---

[2]Defendant testified at the hearing that he is bilingual, and testified in English.

or neutral, and jumped out of the car while it was still rolling.  Defendant claims that he did not know

that the people who came out of the cars were law enforcement, despite the fact that one of the men

was wearing a vest that said FBI.[3]   Defendant testified that the men were yelling and cursing at him,

and that he put his hands behind his head and began going to the ground, but only because he had

seen this on the television show "Cops."[4]  Defendant further testified that the agents were kicking and

punching him, and that they slammed him to the ground, resulting in injuries to his left eye and lip.

Defendant testified that he was confused and that everyone around him was "asking him

different things," such as why he had a gun, and where the money was.  He remembered that at one

point he told the agents that a gun that was located in the vehicle was his, but could not recall

whether this was in response to a question.  According to the Defendant, the agents always spoke to

him in English.   He denied being read his Miranda rights on the scene and "thinks" his rights were

read to him after he was taken to the police station, but he did not agree to talk to the agents.

As the Court announced at the hearing, the Court accepts the testimony of Special Agent

Ruiz, and rejects that of the Defendant that he was intimidated or coerced to make a statement.  This

is based both on the substance of Defendant's testimony but also on the fact that Defendant testified

numerous times that he was "woozy" and "really confused" at the time of the incident, and that he

did not "remember too clearly" what had happened on that day.  In addition to his less than believable

story about why he was in the parking lot in the first place, the Court finds Defendant's testimony that

he did not know the agents were indeed law enforcement at the time of the arrest to be incredible.

---

[3]Defendant stated that he thought the identification was "fake" because FBI hats can be bought at gas stations.

[4]Defendant testified that he did not realize that the people were law enforcement until he saw blue lights flashing after he had already been taken to the ground.

Defendant admitted that at least one of the agents was wearing a vest which said "FBI," and both vehicles had flashing blue lights.  Defendant admittedly put his hands over his head and began to go to the ground when confronted.  Although it is uncontroverted that Defendant suffered a bloody lip during the incident, the Court does not accept Defendant's testimony that this was a malicious act on the part of the agents, but rather finds that it was accidentally inflicted as part of the take down of the Defendant.

The Court further finds that Defendant waived his rights knowingly and voluntarily. Defendant, who had completed school through the eleventh grade, is admittedly fluent in both English and Spanish.  His was able to testify without any difficulty at the hearing, and his testimony was, if not believable, at least understandable.  Defendant further admitted that although he had never been arrested before, he was familiar with the show "Cops" and therefore had at least some familiarity with an arrest procedure.

### Recommendation

Based on the foregoing, it is respectfully recommended that the Defendant's Motion to Suppress Statements be **DENIED.**

The parties have ten (10) days within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 20th day of June, 2008, at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:   Honorable Jose E. Martinez